## R. F. NICHOLS & Co. *v.* GEORGE A. BOTTS et al.

Where the seller remains in possession of slaves sold, and a creditor attacks the sale upon the ground of simulation, the burthen of proof to show the reality and good faith of the sale is thrown upon the purchaser.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *M. M. Cohen* and *Labatt* and *J. R. Grymes*, for appellants. *Roselius* and *Goold*, for appellees. The judgment of the court was pronounced by

EUSTIS, C. J. Certain slaves were seized under a writ of attachment against *John S. Caldwell*, an absconding debtor, issued at the instance of one of his creditors, the present defendant. They were claimed by the plaintiffs, as their property, by virtue of an act of sale from Caldwell to them. On this issue there was judgment in the court of the first instance for the defendant; and the plaintiff has appealed.

The act of sale, under which the plaintiffs claim to own the slaves, was passed before a notary public in New Orleans, on the 21st of November, 1849, and was recorded in the office of the register of conveyances, on the 15th of December of that year. It purports to convey the slaves to the plaintiffs for the sum of $3500 to him, the said *Caldwell*, in hand well and truly paid by the said *Nichols* and his copartner: the receipt of which is thereby acknowledged, as is also the delivery and possession of said slaves. The slaves were seized on the 1st of June, 1850, at the Phœnix House on St. Charles street, a public house kept by *Caldwell*. *Turnbull*, a witness for the plaintiffs, who was in the employment of *Caldwell*, his head bar-keeper, and who had, during two occasions of *Caldwell's* absence to the North, been left in charge of his business, states that he never knew of the sale of the slaves to *Nichols & Co.*, and that they remained in *Caldwell's* possession up to the time of the attachment; that he never heard a word of *Caldwell's* having the slaves of *Nichols* until *Caldwell* was going away. *Caldwell* then told him to give *Nichols* $100 a month for the use of the slaves: this was in Lafayette square, about half an hour before *Caldwell* left.

The evidence of the tax collector is to the effect, that, in February or March, 1850, he applied to *Caldwell* for payment of his tax on slaves. *Caldwell* said that the slaves in his house were hired from *Nichols*: he presented the bill corrected to *Nichols*, who paid it. *Turnbull* also states, that he had access to the books of *Caldwell*, and had he (*Caldwell*) been in the habit of paying hire for the negroes, the witness would have known it.

We think that the district judge was fully justified by the evidence, in considering that *Caldwell* remained in the possession of the slaves after the sale. The possession was public and uninterrupted. The single fact to the contrary, we think, is by itself insufficient to impair it.

The code says: "*In all cases*, where the thing sold remains in the possession of the seller because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated; and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale." Art. 2456.

The answer of the defendant to the plaintiffs' petition asserting the right of property in the slaves, expressly and formally pleaded that the act of sale under which he claimed was simulated and fraudulent, and without consideration; and charged that the slaves had never been delivered by the vender to the plaintiffs.

The plaintiffs rely upon the act of sale alone, and the testimony which we have noted. Even the fact of hiring the slaves by *Caldwell* is not proved. No price for the hire was ever agreed upon, or any amount ever paid for their services. The declaration of the debtor at the time of his absconding, indefinite as it is, is of no aid to the plaintiffs' case. The burthen of proof the law imposed on them to establish was, the precarious title under which *Caldwell* retained the slaves, their own and *Caldwell's* good faith, and the reality of the sale.

After a full trial on these issues, we do not think it a proper case for the allowance of a non-suit in this court. The party has had ample opportunity to prove his title in the court of the first instance, and we find no reason to question the correctness of its judgment.

The judgment of the district court is therefore affirmed, with costs.